**LAW OFFICE OF ADAM G. SINGER, PLLC**
Adam G. Singer (AS7294)
asinger@adamsingerlaw.com
Brett D. Sherman (BS4917)
brett.sherman@adamsingerlaw.com
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HANS ARTHUR BLACK,<br><br>       *Plaintiff*,<br><br>  -against-<br><br><br>VERIZON COMMUNICATIONS INC., EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, LEXISNEXIS RISK SOLUTIONS INC., AND SAGESTREAM LLC,<br><br>      *Defendants.* | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Hans Arthur Black ("Plaintiff"), by his attorneys, the Law Office of Adam G. Singer, PLLC, as and for his Complaint against Defendants Verizon Communications Inc. ("Verizon"), Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), LexisNexis Risk Solutions Inc. ("LexisNexis"), and SageStream LLC ("SageStream"), alleges as follows:

<u>**Preliminary Statement**</u>

1. Plaintiff, Hans Arthur Black, brings this action to recover actual, statutory, and punitive damages, injunctive relief, and statutory attorney's fees pursuant to the Fair Credit

Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA") and the New York Fair Credit Reporting Act, NY General Business Law §380 et seq. ("NY FCRA").

2. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." §1681(a)(4).

3. Moreover, Congress has plainly stated the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." §1681(b).

4. Within the meaning of the FCRA: (a) Defendants Equifax, Experian, TransUnion, LexisNexis, and SageStream, are consumer reporting agencies ("CRAs"); and (b) Defendant Verizon is a "furnisher" of information to CRAs.

5. At its core, this is a "mixed file" case.  A mixed file occurs when a CRA "mixes" information belonging to one consumer into the file of another consumer.  Here, because all CRA Defendants failed to maintain and/or follow reasonable procedures to assure the maximum possible accuracy of information in Plaintiff's credit file, the CRAs mixed – in whole or in significant part – the credit files of Plaintiff, Hans Arthur Black and Plaintiff's father, Hans P. Black.  Accordingly, Equifax, Experian, Trans Union, LexisNexis, and SageStream reported inaccurate and derogatory personal identifier information and account information ("Mixed File Information") to known and unknown creditors and other third-parties. Reporting of Mixed File Information by the CRAs has (a) unlawfully disparaged Plaintiff's credit repayment history, fiscal responsibility as a debtor, creditworthiness, and

character, and (b) caused Plaintiff (i) pecuniary harm, known and unknown, and (ii) to suffer substantial anxiety and emotional distress, cognizable pursuant to the FCRA.

6. Plaintiff first learned about the Mixed File Information on his credit reports after American Express denied his application for a credit card on November 15, 2016 ("Amex Denial"). Because (a) Plaintiff believed that he had no blemishes in his credit reports, and (b) the Amex Denial was the second time in six months that Plaintiff's application for a credit card was denied, Plaintiff realized that he needed to gain a clear understanding about the state of his credit. Accordingly, Plaintiff obtained copies of his credit reports from Equifax, Experian, and Trans Union.

7. When Plaintiff reviewed his credit reports, Plaintiff recognized that Equifax, Experian, and Trans Union were reporting, and likely had long been reporting, inaccurate personal information and/or derogatory tradelines for accounts that never belonged to Plaintiff. Plaintiff immediately began to lodge a series of disputes about inaccurate information on his respective credit reports with Equifax, Experian, and Trans Union.

8. In his disputes, Plaintiff explicitly disputed with Equifax, Experian, and Trans Union all Mixed File Information on his credit reports about which he was aware. In November 2016, Mixed File Information that appeared on one or more of Plaintiff's credit reports – and which he disputed – included (a) derogatory tradelines for accounts with Verizon ("Verizon Account"), Dish Network ("Dish Network Account")[1] and American Express ("American Express Account"), that had been written off and/or placed for collection, and (b) inaccurate personal data (including incorrect name and address information). As described herein,

---

[1] The creditor for the Dish Network Account is listed on different credit reports as "COLLECTION" and "Stellar Recovery Inc."

however, Experian, Equifax, and Trans Union continued to harm Plaintiff by reporting

Mixed File Information on Plaintiff's credit reports.

9. Subsequently, Plaintiff discovered that CRA Defendant SageStream had, upon information

and belief, reported Mixed File Information to Bank of America, N.A. that prevented

Plaintiff from obtaining credit from Bank of America on approximately May 26, 2016.

10. Despite Plaintiff's considerable efforts, the Mixed File Information has nearly eliminated his

access to credit and, due to his ongoing credit nightmare, caused Plaintiff to suffer

substantial emotional distress.

11. Not all Defendants' liability in this case, however, is predicated solely on Mixed File

Information.  For instance, after Plaintiff disputed a derogatory tradeline for the Verizon

Account, both Equifax and Verizon failed to perform reasonable investigations of Plaintiff's

dispute. Because Verizon and Equifax failed to conduct respective reasonable

investigations, (a) Verizon unlawfully verified the account as a legitimate debt of Plaintiff,

and (b) Equifax, in turn, unlawfully continued to report a tradeline for the Verizon Account

on Plaintiff's credit report.

12. Furthermore, on approximately April 20, 2017, LexisNexis made unlawful inquiries to

obtain consumer reports about Plaintiff ("LexisNexis Inquiries") from Equifax, Experian,

and Trans Union in connection with an apparent query from the SEC Division of

Enforcement, Delinquent Filings Branch, with no known connection to Plaintiff.  The

LexisNexis Inquiries violated the FCRA and corresponding provisions of the NY FCRA that

prohibit a person from using or obtaining consumer reports for any purpose that is not

expressly permitted by those statutes.  Upon information and belief, the improper

LexisNexis Inquiries reported on consumer reports about Plaintiff, having a negative impact

on him.  Plaintiff contacted LexisNexis directly to remove that inquiry from his credit files. Upon information and belief, LexisNexis failed to do so, opting instead to send Plaintiff a non-responsive letter directing him to contact the SEC.

13. The unlawful verification and continued reporting of the Verizon Account give rise to causes of action against Verizon and Equifax, and the impermissible LexisNexis Inquiries give rise to a cause of action against LexisNexis, each of which is wholly independent of the CRA Defendants' liability for failing to maintain and/or follow reasonable procedures to assure the maximum possible accuracy of consumer reports about Plaintiff.

14. Thus, Defendant Verizon violated the FCRA by:

   a.  failing to conduct a reasonable investigation of Plaintiff's dispute after receiving notice from Equifax that Plaintiff had disputed a tradeline showing that the Verizon Account was delinquent and had been written off with a past due balance;[2]

   b.  failing to review all relevant information provided by Equifax; and

   c.  failing to promptly modify, delete, or permanently block any information it could not verify as accurate, all in violation of §1681s-2(b).

15. Defendant Equifax violated the FCRA (and analogous provisions of the NY FCRA) by:

   a.  failing to maintain and/or follow procedures to ensure the maximum possible accuracy of the information that it reported about Plaintiff, in violation of §1681e(b); and

   b.  failing to conduct a reasonable reinvestigation of Plaintiff's dispute about the Verizon Account and promptly delete or modify information about the

---

[2] Plaintiff also contacted Verizon directly to dispute that the Verizon Account belonged to him.

Verizon Account that it could not verify as accurate, in violation of §1681i, and, upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision.

16. Defendant LexisNexis violated the FCRA (and analogous provisions of the NY FCRA) by:

    a.  failing to maintain and/or follow procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of §1681e(b); and

    b.  using and obtaining consumer reports about Plaintiff from Equifax, Experian, and Trans Union without a permissible purpose, in violation of §1681b(f), which LexisNexis failed to remove after receiving notice by Plaintiff.

17. Defendants Experian, SageStream and TransUnion each violated the FCRA (and analogous provisions of the NY FCRA) by failing to maintain and/or follow procedures to ensure the maximum possible accuracy of the information that they reported about Plaintiff, in violation of §1681e(b).

18. As a direct and proximate result of Defendants' negligent and willful actions, conduct, and omissions including, upon information and belief, publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic), including, but not limited to, credit denials and/or offers for credit at higher interest rates, impediments to Plaintiff's ability to seek credit, and other damage to Plaintiff's creditworthiness, damage to his reputation, emotional distress, embarrassment, aggravation, and frustration.

19. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

**Jurisdiction and Venue**

20. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). This Court has
    supplemental jurisdiction of those state law claims asserted herein pursuant to 28 U.S.C. §
    1367(a).

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

**Parties**

22. Plaintiff, Hans Arthur Black, is an individual and "consumer" within the meaning of the
    FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)).  Plaintiff resides at 36
    East 36th Street, Apt. 12F, New York, NY 10016.

23. Defendant Verizon Communications Inc. is a Delaware corporation, duly authorized and
    qualified to do business in the State of New York and a "furnisher of information"
    within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.).

24. Defendant Equifax Information Services LLC is a Georgia limited liability company,
    duly authorized and qualified to do business in the State of New York.

25. Defendant Experian Information Solutions, Inc. is an Ohio corporation, duly authorized
    and qualified to do business in the State of New York.

26. Defendant Trans Union LLC is a Delaware limited liability company, duly authorized
    and qualified to do business in the State of New York.

27. Defendant LexisNexis Risk Solutions Inc. is a Georgia corporation, duly authorized and
    qualified to do business in the State of New York.

28. Defendant SageStream LLC is a limited liability company based in San Diego,
    California (and maintains a mailing address in Tempe, Arizona according to the Office
    of the California Secretary of State) that, upon information and belief, conducts business

7

in the State of New York.

29. Equifax, Experian, TransUnion, LexisNexis, and SageStream are "consumer reporting agencies" within the meaning of the FCRA (15 U.S.C. 1681§§ a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## **Factual Background**

### *Mixed Credit Files*

30. Mixed files create a false description of a consumer's credit history.  Although Defendants are liable to Plaintiff for a variety of unlawful conduct, the genesis of most, but not necessarily all, acts and omissions for which Defendants are liable in this action sprouted from a common seed: the failure of the CRA Defendants to maintain and/or follow reasonable procedures to assure the maximum possible accuracy of information that they reported about Plaintiff.

### *Plaintiff's discovery of Mixed File Information*

31. Plaintiff suspected that there were problems on one or more of his credit reports on November 15, 2016, when, despite his belief that he had no history of credit problems, he was denied credit for the second time in approximately six months.  Just a few days later, in a letter dated November 17, 2016, Plaintiff was rejected for yet another credit card.  That same week, determined to identify the reasons for the credit denials, Plaintiff reviewed his Equifax, Experian, and Trans Union credit reports.  Each of these credit reports included Mixed File Information.

***Plaintiff's disputes***

*Experian Dispute*

32. On approximately November 15, 2016, Plaintiff called Experian to dispute all Mixed File Information appearing on his Experian credit report in November, including (a) an inaccurate name and incomplete address for Plaintiff, and (b) tradelines for the Verizon and Dish Network Accounts (which, Plaintiff learned, Dish Network had assigned to a company called Stellar Recovery Inc.), each of which did not belong to Plaintiff and had been placed for collection.  Plaintiff received online dispute investigation results from Experian on November 19, 2016.  The investigation results, which removed the inaccurate address that Plaintiff disputed and stated that Experian's decision about whether to delete the Verizon Account was pending, gave Plaintiff a false sense of comfort that Experian would soon be reporting only accurate information about him.

33. Plaintiff's comfort level concerning his Experian report was reinforced when he received additional investigation results from Experian on December 1, 2016.  The December 1 investigation results stated that, in addition to corrected name and address information, Experian had deleted the Verizon Account and Dish Network (Stellar Recovery) Account from Plaintiff's credit file. Subsequently, however, Plaintiff discovered that the Mixed File Information on Plaintiff's Experian credit reports became much worse.

*Equifax Disputes*

34. On approximately November 15, 2016, November 20, 2016, November 23, 2016, and November 29, 2016 (as well as one or two other occasions late in November), Plaintiff called Equifax to dispute all Mixed File Information then appearing on his Equifax credit reports.  The Mixed File Information on Plaintiff's Equifax credit report in November 2016

included (a) an incorrect name, Hans P. Black (Plaintiff's father), (b) two incorrect addresses in Boston, Massachusetts (where Plaintiff never resided), and (c) tradelines for a Verizon Account, Dish Network Account and American Express Account that (i) did not belong to Plaintiff, and (ii) had been charged off and/or placed for collection. The American Express Account, which was charged off with an unpaid balance of $64,395, was opened on X/X[3], 1984, *shortly before Plaintiff's third birthday*.[4]

35. During Plaintiff's November 15 call, an Equifax representative (who identified herself as "Christine" and stated that her Equifax ID number was CXV42) informed Plaintiff that, to verify his identity, Plaintiff needed to send Equifax information sufficient to establish Plaintiff's identity and correct address.  Plaintiff complied with these instructions, sending Equifax a letter by fax, dated November 16, 2016.  Plaintiff's letter stated his correct name and telephone number and included as attachments Plaintiff's (a) social security card, showing a social security number ending in XXXX and the name Hans Arthur Black, (b) US Passport Card, showing the name Hans Arthur Black and a birthdate of X/X, 1981 (thus confirming that Plaintiff was not yet three years old when the American Express Account was opened), and (c) ConEdison bill, showing Plaintiff's correct address at the time was 280 Park Avenue South, Apt. 9B, New York, NY.

---

[3] Certain personal information has been redacted.

[4] On approximately November 21, 2016, Plaintiff also called the American Express Credit Bureau Unit. American Express (a) confirmed that the company had no account under Plaintiff's social security number, (b) told Plaintiff that Equifax's reporting of the American Express Account was likely a mixed file error, and (c) assured Plaintiff that, within one week, the company would delete the American Express Account from all three credit bureaus (i.e., Equifax, Experian, and Trans Union).  Nevertheless, the American Express Account appears on Plaintiff's Experian credit reports in 2017 and 2018.  Also, in December 2016, Dish Network's collection agent also confirmed to Plaintiff that they had determined that he had never been a Dish Network Customer and, accordingly, the Dish Network Account should never have appeared on Plaintiff's credit reports.

36. When Plaintiff called Equifax on approximately November 29, 2016, he spoke with an
    Equifax employee who identified herself as "Ramy" (Employee #: 256), who confirmed that
    Equifax had received Plaintiff's fax and claimed (a) to have validated the evidence Plaintiff
    had submitted concerning his identity, and (b) that she would submit requests for Equifax to
    update Plaintiff's credit file to include his correct name, remove inaccurate address
    information, and log Plaintiff's disputes of the Verizon Account and Dish Network Account.
    During this call, Equifax provided Plaintiff with confirmation number 6334045515.

37. On approximately December 8, 2016, Plaintiff received an email from Equifax confirming
    its receipt of his disputes.

38. Plaintiff received investigation results from Equifax dated December 22, 2016.  The Equifax
    investigation results (a) were addressed to Hans P. Black (rather than to Plaintiff, Hans A.
    Black), (b) "verified that [the Verizon Account] belong[ed] to Plaintiff," and (c) *conceded*
    that Plaintiff's file was "Mixed."

39. After receiving the December 22, 2016 Equifax Investigation results, Plaintiff placed
    another call to Equifax on approximately January 25, 2017 to dispute its continued reporting
    of Mixed File Information.  During that call, Plaintiff spoke with an Equifax employee who
    identified himself as "Brendan" (Employee #: MJE4), who claimed to review the documents
    Plaintiff had already submitted to verify his identity.  Brendan assured Plaintiff that Equifax
    would update Plaintiff's credit file.

40. On January 25, 2017 Equifax sent additional investigation results. Again, Equifax conceded
    that there was a "Mixed" file problem.  This time, the results were properly addressed to
    Hans Arthur Black at his correct New York City address.  Accordingly, Plaintiff believed
    that Equifax would soon be reporting only accurate information on his credit reports.  Just as

with Experian, however, the Mixed File Information problems with Equifax soon were as

problematic, if not worse, than when Plaintiff first registered disputes with Equifax in

November 2016.

*Trans Union Disputes*

41. On approximately November 19, 2018, Plaintiff called Trans Union to dispute all Mixed

File Information on his Tran Union credit report. The Mixed File Information in November

2016 included (a) an incorrect address in Boston, Massachusetts, and (b) tradelines for a

Verizon Account and Dish Network Account that (i) did not belong to Plaintiff, and (ii) had

been charged off and/or placed for collection. Plaintiff subsequently faxed a letter to Trans

Union to verify his identity and address that included as exhibits the identical documents

that he had faxed to Equifax.  Nevertheless, Trans Union did not correct the Mixed File

Information concerning Plaintiff's personal data.

42. By letter to the Trans Union Consumer Contact Department, dated January 9, 2017, Plaintiff

informed Trans Union that (a) the "name and address on [his] credit file with [Trans Union]

are incorrect" and (b) he had "never resided" at the "address in Boston" that Trans Union

was "currently [reporting] on [Plaintiff's] file."  With the January 9 letter, Plaintiff again

provided Trans Union with his social security card, showing a social security number ending

in XXXX and the name Hans Arthur Black, a US Passport Card, showing the name Hans

Arthur Black and a birthdate of XX/XX, 1981, and a ConEdison bill, showing Plaintiff's

correct address in New York City.

43. Thus, between mid-November 2016 and early January 2017, Plaintiff indisputably had put

Equifax, Experian, and Trans Union on notice that he was the victim of a serious mixed file

problem at all three CRAs.  As set forth in detail below, however, these CRAs have

repeatedly reported (and, upon information and belief, continue to report) Mixed File Information for Plaintiff.

***Mixed File Information that Plaintiff discovered from November 2016 through March 2018***

*Incorrect Name*

44. Equifax, Experian, and Trans Union misreported Plaintiff's name as Hans P. Black on the following credit reports in Plaintiff's possession:

    a.  Plaintiff's Equifax credit report, dated November 19, 2016.

    b.  Plaintiff's Equifax credit report and results of investigation, dated December 22, 2016.

    c.  Plaintiff's Equifax credit report, dated May 30, 2017.

    d.  Plaintiff's Trans Union credit report, dated May 30, 2017.

    e.  Plaintiff's Equifax credit report, dated June 19, 2017.

    f.  Plaintiff's Trans Union credit report, dated June 19, 2017.

    g.  Plaintiff's Trans Union credit report, dated November 7, 2017.

    h.  Plaintiff's Equifax credit report, dated November 8, 2017.

    i.  Plaintiff's Experian credit report, dated November 14, 2017.

    j.  Plaintiff's Trans Union credit report, dated March 25, 2018.

    k.  Plaintiff's Equifax credit report, dated March 30, 2018.

    l.  Plaintiff's Experian credit report, dated March 30, 2018.

*Incorrect Addresses*

45. Equifax, Experian, and Trans Union each repeatedly reported one or more inaccurate addresses in Boston, Massachusetts for Plaintiff.  These addresses, upon information and belief, are (or were) addresses of Hans P. Black.

   a. An incorrect address at 192 South Street, Boston, Massachusetts 02111 appeared on the following credit reports in Plaintiff's possession:

      i. Plaintiff's Trans Union credit report, dated November 17, 2016.

      ii. Plaintiff's Equifax credit report, dated November 19, 2016.

      iii. Plaintiff's Equifax credit report, dated May 30, 2017.

      iv. Plaintiff's Trans Union credit report, dated May 30, 2017.

      v. Plaintiff's Equifax credit report, dated June 19, 2017.

      vi. Plaintiff's Trans Union credit report, dated June 19, 2017.

      vii. Plaintiff's Trans Union credit report, dated November 7, 2017.

      viii. Plaintiff's Equifax credit report, dated November 8, 2017.

      ix. Plaintiff's Experian credit report, dated November 14, 2017.

      x. Plaintiff's Trans Union credit report, dated March 25, 2018.

      xi. Plaintiff's Equifax credit report, dated March 30, 2018.

   b. An incorrect address at Intervest Corp, Boston, Massachusetts 02111 appeared on the following credit reports in Plaintiff's possession:

      i. Plaintiff's Equifax credit report, dated November 19, 2016.

      ii. Plaintiff's Trans Union credit report, dated May 30, 2017.

      iii. Plaintiff's Trans Union credit report, dated June 19, 2017.

      iv. Plaintiff's Trans Union credit report, dated November 7, 2017.

      v. Plaintiff's Experian credit report, dated November 14, 2017.

      vi. Plaintiff's Trans Union credit report, dated March 25, 2018.

      vii. Plaintiff's Experian credit report, dated March 30, 2018.

*The "high risk" Address*

46.  Plaintiff's Experian credit report, dated November 16, 2016, disparages Plaintiff by stating

that the correct address for the New York City apartment building where he lived at the

time, 280 Park Avenue South, could be "perceived as high risk because it has pertained to a

business, or was used as a mail drop or a delivery service."  This notation is a result of

Experian's reckless failure to include Plaintiff's apartment number, and therefore state

Plaintiff's full address, on the credit report.  Many apartment buildings in New York City

lease space to businesses at street level.

*Wrong Telephone Numbers*

47. Experian and Trans Union reported one or more inaccurate telephone numbers as belonging

to Plaintiff on the following credit reports in Plaintiff's possession:

> a.  (514) 922-2522
>
>> i.  Plaintiff's Trans Union credit report, dated November 7, 2017.
>>
>> ii.  Plaintiff's Experian credit report, dated November 14, 2017.
>>
>> iii.  Plaintiff's Trans Union credit report, dated March 25, 2018.
>>
>> iv.  Plaintiff's Experian credit report, dated March 30, 2018.
>
> b.  (442) 785-7855
>
>> i.  Plaintiff's Trans Union credit report, dated November 7, 2017.
>>
>> ii.  Plaintiff's Trans Union credit report, dated March 25, 2018.
>
> c.  (617) 723-7870
>
>> i.  Plaintiff's Trans Union credit report, dated November 7, 2017.
>>
>> ii.  Plaintiff's Trans Union credit report, dated March 25, 2018.

*Inaccurate Tradelines for the Disputed Verizon Account*

48. Inaccurate tradelines for the Verizon Account that was placed for collection and/or charged off, which does not belong to Plaintiff (and which Plaintiff *first disputed* in November 2016) and, upon information and belief, is an account of Hans P. Black, appear on the following credit reports in Plaintiff's possession:

   a.  Plaintiff's Experian credit report, dated November 16, 2016.

   b.  Plaintiff's Trans Union credit report, dated November 17, 2016.

   c.  Plaintiff's Equifax credit report, dated November 19, 2016.

   d.  Plaintiff's Equifax credit report and results of investigation, dated December 22, 2016.

   e.  Plaintiff's Equifax credit report, dated November 8, 2017.

   f.  Plaintiff's Equifax credit report, dated March 30, 2018.

49. The Verizon Account (a) may continue to appear on Plaintiff's Equifax credit report, and (b) likely appeared on consumer reports that CRA Defendants issued about Plaintiff, causing him credit harm, long before he learned that the account was reporting.

*Inaccurate Tradelines for the Disputed American Express Account*

50. Inaccurate tradelines for the American Express Account, *opened when Plaintiff was three years old*, that was placed for collection and/or charged off with a past due balance of $64,000, which does not belong to Plaintiff and, upon information and belief, is (or was) an account of Hans P. Black, appear on the following credit reports in Plaintiff's possession:

   a.  Plaintiff's Equifax credit report, dated November 19, 2016.

   b.  Plaintiff's Experian credit report, dated November 14, 2017.

   c.  Plaintiff's Experian credit report, dated March 30, 2018.

51. The American Express Account likely (a) continues to remain on Plaintiff's Experian credit report, and (b) appeared on consumer reports that CRA Defendants issued about Plaintiff, causing him credit harm, long before Plaintiff learned that the account was reporting.

*Inaccurate Tradelines for the Disputed Dish Network Account*

52. Inaccurate tradelines for the Dish Network Account, which was written off and/or placed for collection with a collection agency or agencies (listed on different credit reports as "COLLECTION" and "Stellar Recovery Inc"), which does not belong to Plaintiff and, upon information and belief, is an account of Hans P. Black, appear on credit reports in Plaintiff's possession listed below:

   a. Plaintiff's Trans Union credit report, dated November 17, 2016.

   b. Plaintiff's Equifax credit report, dated November 19, 2016.

53. The Dish Network Account likely appeared on consumer reports that CRA Defendants issued about Plaintiff, causing him credit harm, prior to Plaintiff learning that the account was reporting.

**Impermissible LexisNexis Inquiry on Plaintiff's Credit Reports**

54. In the Spring of 2017, Plaintiff contacted LexisNexis to dispute and obtain information about one of the LexisNexis Inquiries, dated April 20, 2017, that Plaintiff discovered on his Trans Union credit report. Rather than deleting the unlawful inquiry, LexisNexis advised Plaintiff by letter dated May 19, 2017 to contact the U.S. Securities Exchange Commission ("SEC"), Division of Enforcement, Delinquent Filings Branch, about the inquiry.

According to LexisNexis, it made the inquiry in connection with "an administrative proceeding."[5]

55. Plaintiff has never been involved with or connected to any SEC enforcement proceeding, a fact which Plaintiff reported to both LexisNexis and the SEC.  Nevertheless, LexisNexis Inquiries appear on the following credit reports in Plaintiff's possession:

      a.  Plaintiff's Trans Union credit report, dated May 30, 2017.

      b.  Plaintiff's Trans Union credit report, dated June 19, 2017.

      c.  Plaintiff's Trans Union credit report, dated November 7, 2017.

      d.  Plaintiff's Equifax credit report, dated November 8, 2017.

      e.  Plaintiff's Experian credit report, dated November 14, 2017.

      f.  Plaintiff's Trans Union credit report, dated March 25, 2018.

      g.  Plaintiff's Equifax credit report, dated March 30, 2018.

      h.  Plaintiff's Experian credit report, dated March 30, 2018.

56. The LexisNexis Inquiries, which have had a negative impact on Plaintiff's creditworthiness, were made for an impermissible purpose under the FCRA because the FCRA provided LexisNexis with no statutorily recognized permission to obtain a consumer report about *Hans Arthur Black* on behalf of the SEC (as opposed to the proper individual about whom the SEC was seeking information).

57. Even though Plaintiff advised LexisNexis directly, LexisNexis merely passed the buck for its unlawful actions by providing Plaintiff with contact information for the SEC.  Plaintiff did contact the SEC on several occasions, but the issue was not resolved.

---

[5] Plaintiff subsequently learned that April 20, 2017 LexisNexis Inquiries also appear on his Equifax and Experian credit reports.

58. Moreover, had LexisNexis maintained and/or followed reasonable procedures to assure the maximum possible accuracy of consumer reports it prepared about Plaintiff, LexisNexis would have known, among other things, that, based on the information it received from the CRAs, Plaintiff was not the individual about whom the SEC was seeking information.  As such, LexisNexis could not have lawfully prepared and distributed consumer report(s) about Plaintiff to the SEC.

### Known Credit Harm Plaintiff Suffered Due To Mixed File Information

59. By letter dated May 26, 2016, Plaintiff's application for a BankAmericard Cash Rewards Credit Card was denied ("May BANA Denial").  The May BANA Denial cited credit reports obtained from Defendants Experian and SageStream as the basis for BANA's decision to deny Plaintiff's application.  The May BANA Denial also specifically stated that Plaintiff's "Credit Optics" score, which BANA obtained from SageStream, was 318 on a scale from 1-999.  The denial letter also included four factors as reasons for the credit denial:

- Lack of history at this phone
- Lack of history for Plaintiff at this address
- Distance between an address and phone number
- Insufficient credit history for Plaintiff

60. Under the circumstances, the first three factors signaled to Plaintiff that SageStream had provided BANA with Mixed File Information and that the May BANA Denial was the result of Mixed File Information reported by SageStream and Experian.

61. The November 15, 2016 Amex Denial cited a FICO credit score of 499, which was obtained from Experian, and included the following factors as reasons for the denial:

- There is serious delinquency and derogatory public record or collection agency record on your report.
- The number of accounts that have or had a delinquency.
- There are too few accounts currently paid as agreed. There is no recent information about installment loans on your report.

62. Plaintiff, however, had no delinquent accounts.  As such, Plaintiff was denied approval for an American Express Green Card because Experian reported Mixed File Information to American Express, including inaccurate and derogatory tradelines for accounts that did not belong to Plaintiff.

63. In a letter, dated November 17, 2016, Plaintiff was notified that another application for a BankAmericard Cash Rewards Credit Card had been denied ("November BANA Denial"). The November BANA Denial cited a FICO score of 531, which was obtained from Experian, and included five factors as reasons for the denial:

- Serious delinquency
- Number of accounts with delinquency
- Too few accounts paid as agreed
- Lack of recent bank / national revolving [credit] information
- Too many credit inquiries in the previous 12 months

64. As stated above, however, Plaintiff had no delinquent accounts. Upon information and belief, Experian reported derogatory tradelines and other negative data about Plaintiff based entirely on Mixed File Information.

65. In July 2017, with Plaintiff's credit reports flooded with Mixed File Information, Plaintiff applied for a credit card with Capital One.  Although Capital One issued a credit account to Plaintiff, Capital One set a $1,000 limit on Plaintiff's credit card due to the Mixed File Information.  Moreover, the interest rate on Plaintiff's Capital One card is an exorbitant

24.99%.  Plaintiff applied for the Capital One card to begin the process of rebuilding and repairing his calamitous credit history, which – but for the Mixed File Information – never would have been marred in the first place.

*Damages*

66. Because of Defendants' misconduct, Plaintiff suffered actual damages in the form of economic and non-economic harm, both of which are cognizable pursuant to the FCRA and NY FCRA.

67. Plaintiff has suffered actual damages in the form of financial harm and harm to his dignity arising from injury to his credit rating and reputation.  Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

68. Upon information and belief, Plaintiff's credit reports and file have been obtained from Defendants and reviewed by prospective and existing credit grantors and extenders of credit. The Mixed File Information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

69. Additionally, the Mixed File Information has cost, and continues to cost, Plaintiff substantial time and effort in pursuit of corrected reports, in addition to causing Plaintiff substantial mental anguish, anxiety, and undue stress.  Plaintiff's non-pecuniary harm dwarfs the financial damages he suffered.

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATIONS OF FCRA §1681s-2(b)**
**Against Verizon (Furnisher of Information)**

70. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

71. Verizon, the Furnisher Defendant, violated FCRA §1681s-2(b) by its acts and omissions, including but not limited to:

    a.  failing to conduct a reasonable investigation of Plaintiff's dispute after receiving notice of Plaintiff's dispute from Equifax and other CRAs;

    b.  failing to review all relevant information provided by Equifax and other CRAs; and,

    c.  failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of §1681s-2(b)(1).

72. Due to these violations of §1681s-2(b)(1) by Verizon, Plaintiff suffered actual damages, including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

73. These violations of §1681s-2(b)(1) were willful, rendering the Furnisher Defendant, Verizon, liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

74. In the alternative, Verizon was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §1681o.

**<u>SECOND CAUSE OF ACTION</u>**
**VIOLATIONS OF FCRA §§1681i, §1681e(b), and/or §1681b(f)**
**Against Equifax, Experian, LexisNexis, SageStream, and Trans Union**
**(Consumer Reporting Agencies)**

75. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

76. Equifax violated multiple sections of 15 U.S.C. §1681i by its acts and omissions, including, but not limited to, the following:

a. failing to conduct a reasonable reinvestigation of Plaintiff's dispute concerning the Verizon Account to determine whether the disputed information is inaccurate and record the correct status of the disputed account or delete the item from Plaintiff's credit file in violation of §1681i(a)(1);

b. failing to review and consider all relevant information submitted by Plaintiff concerning his dispute of the Verizon Account, in violation of §1681i(a)(4); and

c. failing to properly delete the disputed inaccurate information about the Verizon Account from Plaintiff's credit files or modify item of information upon a lawful reinvestigation in violation of §1681i(a)(5).

77. Equifax, Experian, LexisNexis, SageStream, and TransUnion violated 15 U.S.C. §1681e(b) by their respective conduct, acts, and omissions, including but not limited to failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of consumer reports and credit files that these CRA Defendants published and maintained for Plaintiff Hans Arthur Black.

78. LexisNexis also violated §1681b(f) by its conduct, acts, and omissions in connection with using and obtaining consumer reports about Plaintiff without a permissible purpose.

79. Because of the CRA Defendants' FCRA violations, Plaintiff suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, anguish, and other emotional harm cognizable pursuant to the FCRA.

80. These violations were willful, rendering the CRA Defendants liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

81. In the alternative, Equifax, Experian, LexisNexis, SageStream, and Trans Union were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §1681o.

### THIRD CAUSE OF ACTION
**VIOLATIONS OF NY FCRA §380-f and/or §380-j**
**Against Equifax, Experian, LexisNexis, SageStream, and Trans Union**
**(Consumer Reporting Agencies)**

82. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

83. Equifax, Experian, LexisNexis, SageStream, and Trans Union violated multiple sections of the NY FCRA (NY GBL §§380-380-u) by their respective acts and omissions.

84. Equifax violated the NY FCRA by:

   a. failing to promptly reinvestigate Plaintiffs dispute concerning the Verizon Account to determine whether the disputed information is inaccurate and record the correct status of the disputed account in violation of §380-f(a); and

   b. failing, after determining that the disputed information concerning the Verizon Account is in error or that it can no longer be verified, to promptly expunge the item and otherwise correct the file and refrain from reporting the item in subsequent consumer reports, in violation of §380-f(b).

85. Equifax, Experian, LexisNexis, SageStream and Trans Union violated the NY FCRA by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit report and credit files that it published and maintained, in violation of §380-j(e).

86. These violations of §380-f and §380-j(e) were willful, making Equifax, Experian, LexisNexis, SageStream, and Trans Union liable for actual damages, costs and reasonable

attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to §380-l.  Plaintiff also is entitled to injunctive relief restraining the CRA Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

87. In the alternative, Equifax, Experian, LexisNexis, SageStream, and Trans Union were negligent, entitling Plaintiff to recover actual damages and costs and reasonable attorney's fees pursuant to §380-m, as well as injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1. Awarding Plaintiff against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n and §1681o as well as, with regard to the CRA Defendants, NY GBL §380-l and §380-m;

2. Ordering the CRA Defendants:

   a. to immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom the CRA Defendants report consumer credit information; and

   b. to send updated and corrected credit report information to all persons and entities to whom the CRA Defendants have reported inaccurate information about Plaintiff within the last three years;

3. Enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights; and

4. Such other and further relief as may be necessary, just, and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all

issues so triable.

> */s/  Adam G. Singer*
> **LAW OFFICE OF ADAM G. SINGER, PLLC**
> Adam G. Singer (AS7294)
> asinger@adamsingerlaw.com
> Brett D. Sherman (BS4917)
> brett.sherman@adamsingerlaw.com
> One Grand Central Place
> 60 E. 42nd Street, Suite 4600
> New York, NY 10165
> T: 212.842.2428